IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**BILLIE R. JAMES**                                                                                       **PLAINTIFF**

v.                                       Case No. 2:22-cv-173-JM

**SOUTHLAND CASINO**                                                                           **DEFENDANTS**

**ORDER**

Plaintiff Billie James, a former employee of Southland Casino, brought this employment discrimination claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), alleging that she suffered workplace discrimination because of her age and was fired in retaliation for formally filing a complaint about the hostile work environment. (Doc. 2 at 3). The parties have both moved for summary judgment. (Doc. 33, 36, 39). Before the Court addresses these motions, some housekeeping is in order.

**I.    Motions**

   **A.    Motion to Compel**

Ms. James's motion to compel (Doc. 28) is DENIED. Ms. James seeks a number of surveillance videos created between January and March 2022. (*Id*.). Southland explains that its in-house surveillance video footage is overwritten every ten days. (Doc. 29, Doc. 45-2 at 2). The Court accepts Southland's explanation that it cannot comply with Ms. James's May 6, 2023 discovery requests for footage from the spring of 2022, as that footage no longer exists.

Ms. James also seeks business records that Southland explains it already has produced. (Doc. 28–29). In reply, Ms. James questions the integrity of those documents claiming the documents are "not the original[s]." (Doc. 31). The Court finds that Southland complied with her discovery request.

Finally, Ms. James seeks the addresses and phone numbers of eight current and former employees. (Doc. 28 at 6–7). Southland complied with discovery by providing the last known information for former employees, even if that information was "address unknown." Although Southland declined to give the personal information of its current employees, Southland nevertheless complied with Ms. James's discovery request by offering to coordinate the appearance of the named-current employees for any deposition Ms. James set. (Doc. 29 at 4).

### B.  Motion for Copies

Ms. James's motion for copies (Doc. 50) is DENIED as MOOT. In that motion, Ms. James asked the Court to provide her a copy of Southland's response to summary judgment. Southland's response was filed on September 14, 2023 (Doc. 45) and contained a certificate of service that the document had been mailed via first-class mail to Ms. James. (*Id*. at 19). Without withdrawing her motion for copies, Ms. James has since responded to the Declaration of Whitney Davis (Doc. 51)—a declaration that was first provided in Southland's Response to Summary Judgment (Doc. 45-5 & 46-1). Therefore, it is apparent from Ms. James's response (Doc. 51) that she received the mailed copy of Southland's response.

### C.  Motion for Order

Ms. James's motion for order (Doc. 64) is DENIED as MOOT. Ms. James challenges the admissibility of Southland's "video tape evidence." (*Id*.). It is evident from the record (Doc. 36-3 at 8), that Southland provided camera footage to Ms. James during discovery; however, Southland has not attached this evidence to any of its pleadings. Rather, the only video evidence produced was done by Ms. James in her motion for summary judgment. (Doc. 35). Whether that video would be admissible at trial, however, need not be decided and is moot.

II.     Facts

Southland Casino hired Ms. James as a bartender in December 2021. (Doc. 36-2 at 1; Doc. 43 at 1). Ms. James was 69 years old both at the time she was hired when she was fired. (Doc. 36-2 at 1, 3; Doc. 43 at 2, 13).

Southland Beverage Manager Sarah Nilson stated that, during Ms. James's employment, Ms. James complained that other bartenders were not restocking the bars before the end of their shifts in violation of the handbook policy. (Doc. 45-4 at 1). Ms. Nilson stated that Ms. James did not mention age when complaining about the bar-stocking issue. (Doc. 45-2 at 2). Ms. Nilson considered Ms. James to not be receptive to training. (Doc. 45-4 at 2). Although Ms. James had prior experience as a bartender, Ms. Nilson explained that Ms. James did not have experience using the beverage "gun" used by Southland. (Doc. 45-4 at 3). Ms. Nilson stated that Ms. James "struggled to learn how to pour drinks using the 'gun' system," "frequently claimed that 'guns' were malfunctioning," and that Ms. James's "difficulties with the 'gun' system caused her performance to suffer, including the speed at which she was able to serve guests." (Doc. 45-4 at 3).

Ms. James completed a "Voluntary Statement Form" with Food and Beverage Manager Whitney Davis on March 11, 2022. (Doc. 46-1 at 1). In it, Ms. James asserted that Food and Beverage Assistant Manager Angela Smothers insulted her by raising her voice and by negatively judging her work pace. (Doc. 46-1 at 1). The handwritten document, in its entirety, reads:

> Feb. 25, I arrived in B Lounge at 11:55 pm. The bar was unstocked and I inherited a long line of customers. Jarrin was on one terminal and I was cashier one. Tamera came in to help. Angie came into the bar and said "you are slow and I swear to God if you don't let someone help you and split tips, I will take you off Friday and Saturday." Later in the night, I asked Angie, "Why do you think I'm slow. (sic) I inherit long lines of customers. They don't stock the bar." She said, "Roan is tired, he works hard. Get your barback to do it."

3

> March 4, Angie was standing back looking at me. She said, "if you don't let someone help you and split tips; you will be gone." I thought maybe she was bartender since Angie said split tips. The young lady was a trainee. She was there 30 mins. And left with Roan. Why did she even bother to threaten and embarrass me. (sic)

(Doc. 36-2 at 15). Ms. James signed and dated the form in Ms. Davis's presence. (Doc. 46-1 at 1–2). Ms. Davis denied that Ms. James made any age-based complaints to her concerning Ms. Smothers' behavior. (Doc. 46-1 at 2). Ms. Nilson confirmed that Roan, referenced in Ms. James's handwritten statement was Roan Gardner, is a 58-year-old bar trainer and lead bartender for Southland. (Doc. 45-4 at 2). Ms. Nilson never saw Ms. Smothers discriminate against Ms. James because of her age, and Ms. James never complained to Ms. Nilson about age-discrimination by Ms. Smothers. (Doc. 45-4 at 3).

Ms. James told Beverage Supervisor Lashundra Biggs that Ms. Smothers has been verbally abusive about her slow performance and had "yelled at her in front of co-workers and guests." (Doc. 45-3 at 1). Ms. Briggs never saw "any threatening, rude, intimidating, or harassing behavior" between Ms. Smothers and Ms. James. (Doc. 45-3 at 2). Ms. Biggs also maintains that Ms. James never made such claims to her. (Doc. 45-3 at 4).

Ms. James's supervisor was Danielle Foppiano, who she described as being in her fifties. (Doc. 36-1 at 2, Doc. 36-2 at 2, Doc. 36-3 at 5–6; Doc. 45 at 5). Ms. James admits that Ms. Foppiano never discriminated against her. (Doc. 36-1 at 2; Doc. 43 at 5).

Southland fired Ms. James following a theft. (Doc. 36-2 at 2). Southland maintains that on March 12, 2022, Ms. James served two drinks to customers, only rang up one drink, and a short time after pocketed the cash for the other drink. (Doc. 36-2 at 2, 8–13). Ms. James admits serving the drinks but denies the theft. (Doc. 43 at 6). Ms. James initially was suspended without pay pending an internal investigation. (Doc. 36-2 at 2, 10–11). After Human Resources Manager

4

Arainna Young reviewed the camera footage and confirmed the theft, Ms. James was formally discharged. (Doc. 36-2 at 2, 13; Doc. 45-2 at 3–4). Southland provided the register receipt from the time in question reflecting the sale of a single drink. (Doc. 36-2 at 12; Doc. 45-2 at 3). Ms. Young also confirmed, through the Daily Banks Issue/Return Log, that Ms. James returned her till to the money room shortly after the theft at 8:56 a.m. (Doc. 36-2 at 3, 14; Doc. 45-2 at 4). Ms. Young acknowledged Ms. James's written complaint about a coworker but denied its consideration with regard to her termination. (Doc. 36-2 at 3–4). Ms. Young further stated that she reviewed Ms. James's payroll records and found no evidence that her hours were cut. (Doc. 45-2 at 1).

### III.   Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987), FED. R. CIV. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## IV. Analysis

While Ms. James's perception of events differs on many of the nuanced facts, the material facts—those related to discrimination—are undisputed. The ADEA protects employees from age-based discrimination. 29 U.S.C. § 623(a)(1). Success on an age discrimination claim requires that Ms. James show: (1) she was at least forty years old; (2) was meeting Southland's expectations; (3) but nevertheless suffered an adverse employment action; and (4) similarly-situated younger employees were treated more favorably. *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007). Because Ms. James offered no direct evidence of age-discrimination, her claims will be considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Ms. James establishes a *prima facie* case of age-discrimination, then the burden shifts to Southland to show a legitimate, nondiscriminatory reason for its actions. If Southland satisfies its burden, the burden shifts back to Ms. James to show Southland's proffered reason was pretextual. *Thomas*, 483 F.3d at 528 (citing *McDonnell Douglas*, 411 U.S. at 804). Under this

standard, the Court finds that Ms. James has not shown a *prima facie* case of discrimination. Further, there is no evidence that her termination was retaliatory.

Ms. James has neither shown that she was meeting Southland's legitimate expectations nor that similarly situated employees were treated more favorably. While Ms. James's maintains that she was subjected to pervasive age discrimination, she offers no specific allegations evidencing it. Instead, Ms. James's primary complaint concerned how Ms. Smothers spoke to her about her pace of work. Specifically, Ms. James recounts that Ms. Smothers was unnecessarily loud, chastised her in front of both coworkers and customers, and threatened to change her schedule. (Doc. 34 at 2). Ms. James recounted as much to Southland in her written complaint. Ms. James also claims that her shifts were unexpectedly changed, her work hours were cut, and that she was given different instructions than younger bartenders. Ms. James alleges that two younger employees, Roan Gardner and Jaron Tipton, were allowed to end their shifts without performing bar preparation as required in the employee handbook. (Doc. 39 at 2). She explains that their failure to prep the bar is what caused her to work more slowly.

Accepting all of Ms. James's assertions as true, she has presented no evidence of age discrimination. Certainly, Ms. Smothers' criticisms about Ms. James's pace do not amount to age discrimination. In her amended motion for summary judgment, Ms. James alleges that Ms. Smothers made "age-based comments," but she never expounds on what those comments were. (Doc. 39 at 3). Further, the record does not support Ms. James's claims that her hours were reduced or that her shifts were negatively changed. (Doc. 45-2 at 1). Moreover, Ms. James has not established that similarly situated younger employees were treated differently. Ms. James says that Mr. Gardner and Mr. Tipton were allowed to leave without prepping the bar. It appears, however, that Ms. James took issue with beginning a shift without a stocked bar and attempted to shoehorn

that complaint into an age discrimination claim. Both her direct supervisor, Ms. Foppiano, and the lead bartender, Mr. Gardner, were over 40 years old and, thus, in the same protected class. Besides, Mr. Gardner's position as the lead bartender precludes his consideration as similarly situated. Assuming that Mr. Tipton was a similarly situated younger employee, Ms. James has not shown that he was treated differently—that he also served more drinks than he rang up in order to pocket the difference but was not fired.

Ms. James violated Southland policy when she failed to ring up both drinks she served. As a result, she not only failed to meet Southland's employment expectations but the theft created a legitimate nondiscriminatory reason for her termination. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, at 935 (8th Cir. 2006) ("violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee"). For the same reason, Ms. James has not established that she was fired in retaliation for her filing the complaint about Ms. Smothers. Nothing in the verbiage of Ms. James's hand-written complaint about Ms. Smothers supports an age-discrimination claim; and, all of the employees with whom Ms. James discussed the issue denied that Ms. James ever mentioning age discrimination. In her deposition, Ms. James admitted that she served two drinks, but she maintained (then and in subsequent pleadings) that she rang up both drinks. (Doc. 36-2 at 8–9; Doc. 43 at 6). Ms. James assertions that the theft did not happen, however, are not persuasive in light of Ms. Young's sworn statement that she verified the theft on video and provided the ticket stub from the time of the sell reflecting that only one drink was reported sold. Southland's reasonable belief that the theft occurred justified Ms. James's termination and overcomes any suggestion of pretext. *Scroggins v. University of Minnesota*, 221 F.3d 1042, 1045 (8th Cir. 2000).

## V.  Conclusion

For the reasons stated above, Ms. James's motion to compel (Doc. 28) is DENIED, and her motions for copies (Doc. 50) and motion for order (Doc. 64) are DENIED as MOOT. Ms. James's Motions for Summary Judgment (Doc. 33 & 39) are DENIED. Southland's Motion for Summary Judgment (Doc. 36) is GRANTED. The case is dismissed with prejudice.

IT IS SO ORDERED this 7th day of November, 2023.

_____
UNITED STATES DISTRICT JUDGE